UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-cr-00271-SRC-1 |
| ) | |
| JERRIS M. BLANKS, ) | |
| ) | |
| Defendant. ) | |

**Memorandum and Order**

For the third time, Jerris M. Blanks seeks compassionate release. This time he uses his health conditions and his allegation that he is the only available caregiver for his mother and grandmother as the bases for his release. The evidence Blanks provides, however, isn't sufficient to support his request, and the factors set forth in 18 U.S.C. § 3553(a) weigh heavily against Blanks's release. Accordingly, the Court denies Blanks's motion.

**I.     Background**

    **A.     Offense conduct**

The Presentence Investigation Report sets forth the following facts:

    According to Federal Bureau of Investigation (FBI) and the Regional Computer Crimes Education and Enforcement Group (RCCEEG) records, on March 4, 2011, during an internet undercover operation a computer was identified that possessed and was offering to participate in the distribution of child pornography. Specifically, a detective was able to connect to the computers internet protocol (IP) address and download two files including the following: an image file of a minor female nude laying on her side with her knees towards her chest making the focal point of the image her vagina and an image file of a minor female with her bikini bottoms pulled down making the focal point of the image her vagina. Charter Communications identified the IP address as registered to Alice Padgitt (not indicted) [in] Festus, Missouri. Alice Padgitt is the grandmother of Jerris M. Blanks.

    . . . .

On August 18, 2011, a search was executed at . . . the residence of Blanks. [Blanks] was interviewed and admitted to searching and downloading child pornography on the desktop computer located in the residence. During the search, law enforcement seized numerous CDs/DVDs, a Fuji Film XD 16MB picture card, a RCA thumb drive, a Cal-Comp A100 cellular telephone, and a Dell desktop computer. An analysis of the computer revealed a Maxtor Diamond Max hard drive, manufactured in Singapore, which contained 569 images and 14 video files of child pornography. The images and videos depicted children, some under the age of 12, partially or completely nude engaged in sexual activity with adults or other children. Some of the images depicted bondage. Analysis also revealed at the time of seizure the computer was downloading images of child pornography from "Frostwire" which is a peer 2 peer (P2P) file sharing program. An analysis of the CDs/DVDs revealed a CD containing 61 images of child pornography which included images of prepubescent children engaged in sexual activity. One of the images depicted bondage. Blanks was transported to the Festus, Missouri, Police Department for questioning and released the same day. Upon interviewing [Blanks], Blanks admitted to searching for and masturbating to child pornography. Blanks indicated he preferred girls and transsexuals ages 13 to 16. During the interview, [Blanks] admitted to using the P2P networks "Frostwire" and "Limewire." Blanks provided an explanation of what a P2P network means and indicated he obtained material by downloading it from another user.

. . . .

On June 18, 2015, the St. Louis County, Missouri, Police Department received a cyber tip from the National Center for Missing and Exploited Children (NCMEC) that the Google email address of "stlfixhop@gmail.com" had uploaded child pornography. Specifically, image files depicting the following: a prepubescent nude female performing oral sex on a prepubescent nude female; an adult male inserting his penis into the vagina of a prepubescent nude female; a nude adult male sitting in a chair with a nude prepubescent female sitting in his lap and holding the male's erect penis in her hand, a nude adult male with an erect penis, a female's head, both of which are touching the buttocks of a nude prepubescent female lying face down on a bed, an adult female standing next to a dressed prepubescent female whose left hand is touching the vagina of the adult female, two nude prepubescent females sitting on a leather couch with their legs spread and their hands spreading apart their vaginas, and two prepubescent nude females performing oral sex on one another while a third female partially dressed holds a dog chain over one of the prepubescent females. A record check of the email address and mobile telephone number associated with the tip revealed that it was registered to [Blanks].

. . . .

On June 26, 2015, detectives responded to [Blanks's] residence . . . ; however, he was not present. Blanks contacted the detectives and at their request

met with them at a south St. Louis County, Missouri, police station. Blanks indicated he did not want to answer whether he had uploaded improper material with his email address; however, provided detectives with his cellular telephone. [Blanks] requested his attorney; however, spontaneously stated, "I could not afford to get a counselor and I was doing better for a long time." An analysis of [Blanks's] cellular telephone, a Samsung, GT-i1952 Mega, revealed 476 image files depicting minors in little to no clothing. In some of these images the minors were displaying their genitals. These images were located using an extraction program which recovers information from call logs, contacts, email drafts, installed applications, instant messages, notes, passwords, user accounts, and other data files on the device.

. . . .

In summary, between March 2011, and June 2015, [Blanks] knowingly received and possessed child pornography from the internet, a means or facility of interstate commerce. Blanks stored these images and videos to multiple devices that had been produced outside the State of Missouri, and therefore, traveled in interstate and/or foreign commerce. [Blanks] possessed more than 600 images of child pornography where each video is considered to be the equivalent of 75 images. Some of the images and videos possessed by [Blanks] depicted prepubescent minors and minors engaged in sadistic or masochistic conduct.

Doc. 245 at ¶¶ 6–10 (emphases omitted).

### B.   Indictments

In June 2016, a federal grand jury indicted Blanks on one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Docs. 1–2. United States Magistrate Judge Patricia L. Cohen released Blanks on bond subject to certain conditions. Doc. 5–7. In June 2017, a federal grand jury returned a superseding indictment, charging Blanks with one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and two counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Docs. 70–71.

### C.   Conviction

In January 2019, Blanks went to trial on his charges. Doc. 217. After a three-day trial, the jury unanimously found Blanks guilty on all three counts. Docs. 220, 224. The PSR calculated Blanks's total offense level as 37 and his criminal history category as I, making his

3

guidelines range of imprisonment 210–262 months. Doc. 245 at ¶ 71. In May 2019, United States District Judge E. Richard Webber, now retired, sentenced Blanks to a 130-month term of imprisonment on each of counts one, two, and three, to be served concurrently, followed by a 15-year term of supervised release on each of counts one, two, and three, to be served concurrently. Doc. 248. Because Blanks never had a relationship with his father, Judge Webber granted Blanks a downward variance. Doc. 266, Sent. Tr. at 13:15–13:18; doc. 248. In August 2019, Judge Webber amended the judgment to include $5,000 in restitution. Doc. 269.

### D.     Appeal

Blanks appealed, and the parties filed a joint memorandum asking the Eighth Circuit to limitedly remand the case for the purpose of resentencing on count two. Docs. 251, 276. Under the 2011 version of 18 U.S.C. § 2252A(a)(2), the maximum term of imprisonment Blanks could have faced for count two was 120 months. Doc. 276 at 1 (The Court cites to page numbers as assigned by CM/ECF.). In May 2020, Judge Webber held a resentencing hearing. Doc. 284. Judge Webber sentenced Blanks to a 130-month term of imprisonment on counts one and three and a 120-month term of imprisonment on count two, all terms to be served concurrently. Doc. 285 at 2. Blanks again received a 15-year term of supervised release, and Judge Webber again imposed $5,000 in restitution. *Id.* at 3, 7. In February 2021, the Eighth Circuit affirmed Judge Webber's Amended Judgment. Docs. 315–316. Blanks appealed his conviction to the United States Supreme Court, doc. 337, but the Supreme Court denied certiorari in December 2021, doc. 356.

### E.     Prior requests for compassionate release

On April 17, 2020, Blanks submitted a request to his warden for home confinement due to COVID-19. Doc. 296-1. On May 1, 2020, the warden denied Blanks's request. *Id.* In

4

October 2020, Blanks filed his first compassionate-release motion, arguing that his incarceration placed him in exceptional danger of infection of COVID-19 because of his medical conditions, specifically his diabetes, high blood pressure, heart disease, pulmonary fibrosis, and high cholesterol.  Docs. 296, 307.  Additionally, Blanks is obese.  *Id*.  Judge Webber denied Blanks's motion, finding that Blanks failed to exhaust his administrative remedies, failed to identify an extraordinary and compelling reason justifying early reason, and that the factors in 18 U.S.C. § 3553(a) weighed against release.  Doc. 321.  In July 2021, Blanks filed a motion for reconsideration.  Doc. 324.  In January 2022, Judge Webber denied Blanks's motion as untimely under Federal Rule of Appellate Procedure 4(b).  Doc. 363 at 8.

In September 2021, Blanks filed his second compassionate-release motion, incorporating Blanks's previous filings (motion to reconsider, docs. 322-324, and reply to the United States' response to motion to reconsider, docs. 329-331).  Doc. 338; doc. 363 at 3.  Blanks asserted that his underlying health conditions—obesity, type 2 diabetes with diabetic neuropathy, a smoking history, hypertensive heart disease, hyperlipidemia, vitamin D deficiency, and now asthma—along with his poor mental health, race, and gender constitute serious comorbidities, and therefore, are extraordinary and compelling reasons due to COVID-19.  Doc. 323-1 at 2.  Blanks further argued that his grandmother needed his help.  *Id.* at 11, n15.  Judge Webber acknowledged that Blanks had serious medical conditions, doc. 363 at 16, but found that Blanks failed to demonstrate that the Bureau of Prisons was unable to adequately treat Blanks while he is incarcerated, *id*.  Additionally, Judge Webber found that Blanks's grandmother's needing help didn't constitute extraordinary and compelling reasons that warranted release.  *Id.* at 18–19.  Therefore, in January 2022, Judge Webber denied Blanks second compassionate-release motion.  *Id.* at 22.

5

In June 2024, Blanks filed his third compassionate-release motion seeking compassionate release on the bases of his health and the need to provide for his mother and grandmother. Doc. 401. His counsel chose not to file a supplemental motion on Blanks's behalf. Doc. 406. However, the United States filed a response in opposition to Blanks's release, doc. 408, and Blanks filed a reply, doc. 412. Additionally, Blanks filed a motion for the Court to sanction the United States. Doc. 413. Blanks's motions are ripe for the Court's consideration.

## II.     Standard

The compassionate-release statute provides:

> **(c) MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > **(1)**   in any case—
> >
> > > **(A)**   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i)   extraordinary and compelling reasons warrant such a reduction;
> > > >
> > > > . . . .
> > > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

6

After sentencing, district courts have very limited authority to modify the sentence. *See* § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except [under certain listed exceptions]."); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. § 3582(b))); Fed. R. Crim. P. 35(a) ("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.").

The Court may grant compassionate release if the court finds, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). The Sentencing Commission's "applicable policy statements" changed on November 1, 2023. *Compare* U.S. Sent'g Guidelines Manual §1B1.13 (U.S. Sent'g Comm'n 2023) *with* U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2021). The amendments expanded the list of extraordinary and compelling considerations, including, as relevant here, the scope of medical and family circumstances. *See* U.S. Sent'g Guidelines Manual §1B1.13(b)(1), (3) (U.S. Sent'g Comm'n 2023).

### III.   Discussion

#### A.   Exhausting administrative remedies

"According to the plain terms of § 3582(c)(1)(A), prisoners can bring compassionate-release motions on their own once they have exhausted their administrative remedies." *United States v. Houck*, 2 F.4th 1082, 1083 (8th Cir. 2021) (citation omitted). "Exhaustion occurs at

7

the earlier of either (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner's] facility.'"  *Id.* at 1083–84 (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)).  "This requirement is a mandatory claim-processing rule."  *Id.* at 1084 (citations omitted).  But "[u]nlike jurisdictional rules, mandatory claim-processing rules may be forfeited 'if the party asserting the rule waits too long to raise the point.'"  *Manrique v. United States*, 581 U.S. 116, 121 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)).  As such, courts enforce the rule when the opposing party properly raises failure to exhaust as a defense.  *Houck*, 2 F.4th at 1084; *Manrique*, 581 U.S. at 121.

Here, Blanks submitted his compassionate-release request to the warden on January 3, 2024.  Doc. 401-1.  The warden denied Blanks request on March 29, 2024, concluding:

> Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U. S. C. §§ 3582 and 4205(g)</u>, states "a sentencing court, on motion of the Director of the Bureau of Prisons (BOP), may reduce the term of imprisonment of an inmate sentenced under the Comprehensive Crime Control Act of 1984."  A review of medical documentation does not reflect you are currently experiencing a deteriorating physical or mental condition which would diminish your ability to function in a correctional facility.  Additionally, your medical condition is not currently considered terminal within 18 months.  Accordingly, you have not demonstrated your request meets the minimum eligibility requirement in the Compassionate Release/Reduction in Sentence based on Non–Medical Circumstances—Death or Incapacitation of the Family Member Caregiver or Medical Circumstances.

Doc. 409-1 at 2.

The United States claims that Blanks failed to exhaust his administrative remedies with the BOP because he didn't appeal the warden's denial.  Doc. 409.  However, as Blanks points out in his motion for sanctions, doc. 413 at 1, 18 U.S.C. § 3582(c)(1)(A) provides that a defendant can file a compassionate-release motion with the Court "*after* the defendant has fully

8

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or *the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*." (emphasis added). In this case, a 30-day lapse occurred between when Blanks submitted his request to the warden on January 3, 2024, and when the warden denied Blanks's request on March 29, 2024. *See* doc. 401-1; doc. 409-1. Therefore, the Court now addresses the merits of Blanks's third compassionate-release motion.

### B. Extraordinary and compelling reasons[1]

Blanks seeks immediate release from incarceration based on his health and the need to care for his mother and grandmother. Doc. 401. Blanks bears the burden of showing that a sentence reduction is warranted, *see United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016), but has failed to provide sufficient evidence to support his claimed bases for a sentence reduction.

First, Blanks argues that his underlying health conditions, including

> worsening uncontrolled type-2 diabetes[,] spreading diabetic neuropathy[,] obesity[,] hyperlipidemia[,] untreated anxiety[,] untreated several depression[,] uncontrolled asthma[,] reduced lung volume[,] untreated worsening sleep apnea[,] untreated sleep deprivation[,] hypertensive heart disease[,] uncontrolled high blood pressure[,] allergies[,] osteoarthritis[,] untreated excruciating back and neck from herniated spinal disc[,] frequent headaches[,] post[-]COVID-19 long-haul symptoms (memory loss, dizziness, lack of focus, SOB[), and] enlarged liver with suspect growth[,]

---

[1] In its legal standard section, the United States claims that "[t]hree courts of appeal, along with and [sic] several judges in the Eastern District of Missouri, have found that courts are no longer bound by [the Sentencing Commission's extraordinary and compelling reasons] definition because the Sentencing Commission has not revised section 1B1.13 since the enactment of the Frist Step Act." Doc. 408 at 7, n2. The Court notes that Amendment 814 revised §1B1.13 to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making §1B1.13 applicable to both defendant-filed and BOP-filed motions. *See* §1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant . . .").

9

doc. 401 at 2, are extraordinary and compelling reasons that warrant his release.   Blanks claims that the BOP has failed to properly address his medical issues on several instances.  *Id*.   In support, Blanks offers a letter dated February 3, 2024, from Dr. Danish A. Jabbar with Midwest Medical Practitioners.   Doc. 401-2.

The United States discussed Blanks's medical conditions with the Health Services Administrator at FCI Seagoville, the facility in which Blanks is housed.   Doc. 408 at 10. According to the Administrator, Blanks has the following diagnoses:   "Hyperlipidemia, Type 2 diabetes mellitus with diabetic neuropathy, hypertensive heart disease without heart failure (stable), sleep apnea, asthma (stable), gastroesophageal reflux disease (stable), Gastritis [sic] without bleeding, anxiety disorder, and allergic rhinitis."   *Id.*   The Administrator opined that Blanks is currently not diagnosed with a terminal illness or experiencing any deteriorating mental or physical health that substantially diminishes his ability to function in a correctional facility.   *Id*.; *see* doc. 409-1 at 2. ("A review of medical documentation does not reflect you are currently experiencing a deteriorating physical or mental condition which would diminish your ability to function in a correctional facility.   Additionally, your medical condition is not currently considered terminal within 18 months.").   The Administrator advised that all inmates, including Blanks, are responsible for reporting to a "pill line" in order to receive their prescribed medications, including insulin.   Evidence shows that between September 1, 2023, and September 20, 2024, Blanks either refused (marked as R) or was a no show (marked as NS) at the Insulin Line 3 "pill line" dozens of times.   Docs. 408-1; 408-2.   As a result, the United States argues that Blanks himself is responsible for not receiving his insulin shots on dozens of occasions over the last year.   Doc. 408 at 10.

10

The guidelines explain that medical circumstances may warrant a sentence reduction when the defendant suffers from a terminal illness, exhibits a substantially diminished ability to take care of himself, requires long-term or specialized care he is not receiving in custody, or is at risk of an ongoing infectious-disease outbreak or public-health emergency. The applicable guideline provides:

> Extraordinary and compelling reasons [that may warrant a sentencing reduction] exist . . . [if]:
>
> . . . .
>
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of

11

    infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii) such risk cannot be adequately mitigated in a timely manner.

U.S. Sent'g Guidelines Manual §1B1.13(b)(1)(A)–(D) (U.S. Sent'g Comm'n 2024).

  Based on the evidence in the record, Blanks fails to meet the guidelines' standard for his claims. The evidence does not reflect that Blanks is currently experiencing a deteriorating physical or mental condition that would diminish his ability to function in a correctional facility, and his medical condition is not currently considered terminal. Additionally, Blanks fails to demonstrate that the BOP is unable to adequately treat him. Applying the plain meaning of the applicable guidelines, the Court cannot conclude that Blanks's purported health conditions constitute "extraordinary and compelling reasons" warranting a sentence reduction.

  Second, Blanks argues that the Court should grant him compassionate release because he is the only available caregiver for his mother and grandmother. Doc. 401 at 13–14. Blanks claims his mother "had a stroke[-]like event that triggered fibromyalgia" in December 2023 that "left her incapacitated, unable to walk, incontinent, [and] unable to prepare meals or feed herself." *Id.* at 13. Following her hospitalization, Blanks's mother was placed in a nursing facility for "temporary rehab, speech and physical therapy." *Id.* Blanks claims that his mother has since left the nursing facility despite her inability to fully self-care. *Id.* As for his grandmother, Blanks claims that she is 85 years old, is handicapped, and needs a caregiver. *Id.* at 14. Blanks claims that he is the only available caregiver because he has no other siblings, his mother has no other siblings, and his 20-year-old daughter is unable to care for her grandmothers

12

because she is in school and works full time in Denver.  *Id.* at 13.  Blanks provides no information about who is currently caring for his mother or grandmother.  *See id.*

In response, the United States argues that the Judge Webber already considered this same plea and found that Blanks's wish to care for his mother and grandmother are not extraordinary and compelling reasons that warrant release.  Doc. 408 at 11 (citing doc. 363 at 18; *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020)).  However, both the order and case that the United States cites to were issued before Amendment 814, which went into effect on November 1, 2023.  Amendment 814 expanded the list of reasons that may qualify as "extraordinary and compelling" for a sentence reduction.  The applicable guideline now provides:

> Extraordinary and compelling reasons [that may warrant a sentencing reduction] exist . . . [if]:
>
> . . . .
>
> (A)  The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C)  The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D)  The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S. Sent'g Guidelines Manual §1B1.13(b)(3)(A)–(D) (U.S. Sent'g Comm'n 2024).

13

While it appears that Blanks's mother does have several medical diagnoses, doc. 401-21, Blanks provides no evidence that supports that his mother and grandmother are incapacitated and require a caregiver at this time.  Blanks also provides no information about who is currently caring for his mother and grandmother, assuming both need a caretaker, and fails to provide actual evidence that he is the only available caretaker.  Accordingly, the Court cannot conclude that Blanks's family circumstances constitute "extraordinary and compelling reasons" that warrant a sentencing reduction.

    **C.**    **Section 3553(a) factors**

Even if extraordinary and compelling reasons supported Blanks's request for a sentence reduction—which they do not—the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Among others, these factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed, *inter alia,* "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(1)–(2).  The Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."  18 U.S.C. § 3553(a)(6).

The Eighth Circuit affords district courts "broad discretion" in weighing the section 3553(a) factors.  *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (citation omitted).  District courts need not "mechanically recite the sentencing factors listed in 18 U.S.C. § 3553(a)."  *United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020) (citation omitted).  "When considering the § 3553(a) factors, '[a] district court is not required to make specific findings; all that is generally required to satisfy the appellate court is evidence that the district

14

court was aware of the relevant factors.'" *United States v. Castillo*, 713 F.3d 407, 412 (8th Cir. 2013) (alteration in original) (quoting *United States v. Perkins*, 526 F.3d 1107, 1110 (8th Cir. 2008)).

After reviewing the section 3553(a) factors, the Court finds that Blanks has failed to carry his burden for release.   When reviewing the nature and circumstances of the offense and the history and characteristics of Blanks, the Court finds that these factors weigh heavily against release.

In this case, Blanks received and possessed child pornography between March 2011 and June 2015.   Doc. 245 at ¶ 10.   On March 4, 2011, during an internet undercover operation agents identified a computer located at Blanks's residence that "possessed and was offering to participate in the distribution of child pornography."   *Id.* at ¶ 6.   On August 18, 2011, law enforcement executed a search warrant at Blanks's residence.   *Id.* at ¶ 7.   Blanks "admitted to searching and downloading child pornography on the desktop computer located in the residence."   *Id.*   An analysis of the computer revealed a hard drive, "which contained 569 images and 14 video files of child pornography."   *Id.*   "Analysis also revealed at the time of seizure the computer was downloading images of child pornography from 'Frostwire,'" which is a peer-2-peer file-sharing program.   *Id.*   An analysis of the CDs/DVDs located at the residence "revealed a CD containing 61 images of child pornography."   *Id.*   Law enforcement was obviously on to Blanks in 2011; however, Blanks continued to view and share child pornography even after law enforcement executed the search warrant in 2011.

In June 2015, law enforcement received a cyber tip that an email address registered to Blanks had uploaded child pornography.   Doc. 245 at ¶ 8.   Law enforcement responded to Blanks's residence on June 26, 2015; however, Blanks was not home.   *Id.* at ¶ 9.   Blanks

15

contacted law enforcement and at their request met with them at a police station. *Id.* Blanks did not want to answer whether he had uploaded improper material with his email address; however, he provided detectives with his cellular telephone. *Id.* An analysis of Blanks's cellular telephone "revealed 476 image files depicting minors in little to no clothing." *Id.*

In summary, between March 2011 and June 2015, Blanks "possessed more than 600 images of child pornography where each video is considered the equivalent of 75 images." *Id.* at ¶ 10. Some of the images and videos possessed by Blanks "depicted prepubescent minors and minors engaged in sadistic or masochistic conduct." *Id.*

After law enforcement arrested Blanks in July 2016, the Judge Cohen released him on bond. Docs. 5–7. United States Pretrial Services Office records indicate that Blanks did not comply with all Court ordered conditions of release while on bond in this case. Doc. 245 at ¶ 3. Blanks's bond supervision commenced July 7, 2016. *Id.* On July 22, 2016, Blanks incurred a violation "for submitting a positive urinalysis for the use of marijuana on July 15, 2016." *Id.* Blanks admitted to using marijuana on July 7, 2016, prior to his court appearance. *Id.* On September 19, 2016, Blanks "incurred a violation for submitting a positive urinalysis for the use of marijuana on August 28, 2016." *Id.* On October 12, 2016, Blanks "incurred a violation for having a computer at his residence that was not password protected." *Id.*

Further, Blanks's pretrial officer reprimanded him "for allowing a girlfriend and her minor daughter to reside at his residence and concealing it from the United States Pretrial Services Office." *Id.* On February 21, 2017, Blanks "incurred a violation for failing to report for drug testing on February 15, 2017." *Id.* "On May 22, 2017, Blanks incurred a violation for failing to attend group sex offender counseling on May 15, 2017, and substance abuse treatment on May 18, 2017." *Id.* On June 19, 2017, Blanks "incurred a violation for failing to report for

16

sex offender counseling on June 12, 2017." *Id.*  On December 27, 2017, Blanks "incurred a violation for submitting a diluted urine sample."  *Id.*  On March 5, 2018, Blanks "incurred a violation for failing to submit a urine sample for drug testing on February 25, 2018, and for failing to charge his electronic monitoring equipment as required."  *Id.*

Blanks's violations continued.  On April 3, 2018, Blanks "incurred a violation for submitting a diluted urine sample on March 16, 2018."  *Id.*  "On August 9, 2018, Blanks incurred a violation for failing to submit a urine sample for drug testing on August 7, 2018."  *Id.* On October 16, 2018, Blanks "incurred a violation for failing to report for required drug testing on October 14, 2018."  *Id.*  On November 13, 2018, Blanks "incurred a violation for failing to attend sex offender group counseling on November 6, 2018."  *Id.*  Judge Webber remanded Blanks into custody on January 16, 2019, "at the conclusion of his trial and following a guilty verdict."  *Id*.

While Blanks had no criminal history, he did testify at trial that he ran a prostitution business before having a child.  Doc. 236, Trial Tr. 2 at 209:17–211:2.  At sentencing, Blanks received a 2-point adjustment for obstruction of justice for his conduct during this case.  Doc. 245 at ¶¶ 18, 29.  Blanks testified under oath in direct conflict with the United States' witnesses and the verdict.  Doc. 245 at ¶ 18.  "For example, Blanks indicated his uncle was responsible for the child pornography on his computer and a 'John' was responsible for the images on his cellular telephone.  In addition, investigative reports from the [United States] indicate Blanks attempted to get his cousin to lie for him at trial."  *Id.*

Blanks's conduct before and after his indictment concerns the Court.  Blanks never accepted responsibility for his crimes, yet as to counts 1 and 3 of the indictment, he received a below-the-guidelines-range sentence.  Doc. 245 at ¶¶ 70–71; doc. 285 at 2.  Releasing Blanks

early would neither reflect the seriousness of his offense nor provide just punishment for his offense. It would also give rise to unwarranted sentence disparities among similarly situated defendants. For these reasons, the Court finds that the section 3553(a) factors weigh against Blanks's release. Having thoroughly considered the record and all relevant matters, the Court finds no basis to reduce Blanks's sentence.

### IV.     Conclusion

For the reasons set forth above, the Court denies Blanks's [401] Motion for Reduction in Sentence Under 18 U.S.C. 3582(c)(1)(A)(i). Additionally, the Court finds sanctions are not warranted and denies Blanks's [413] Request for Sanctions.

So ordered this 23rd day of May 2025.

```
                                    SLR. CR
                              _____
                              STEPHEN R. CLARK
                              CHIEF UNITED STATES DISTRICT JUDGE
```